UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Ron I.,

     Plaintiff,

     v.                                                   Civil Action No. 2:23–cv–489

Commissioner of Social Security,

     Defendant.

**<u>OPINION AND ORDER</u>**
(Docs. 11, 15)

Plaintiff Ron I. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security

Act, requesting review and remand of the decision of the Commissioner of Social Security

denying his application for Disability Insurance Benefits (DIB).  Pending before the Court are

Plaintiff's motion to reverse the Commissioner's decision (Doc. 11), and the Commissioner's

motion to affirm the same (Doc. 15).  For the reasons stated below, Plaintiff's motion is granted,

the Commissioner's motion is denied, and the matter is remanded for further proceedings and a

new decision.

**<u>Background</u>**

Plaintiff was forty-seven years old on his alleged disability onset date of June 17, 2020.

(AR 269.)  He graduated from high school in 1991, and thereafter attended three years at

Vermont Technical College.  (AR 302, 341, 632.)  He also attended trade schools in the fields of

welding, aviation, and toolmaking.  (AR 50–52, 302.)  Plaintiff is a veteran of the United States

military, deploying to Iraq during the Second Gulf War in 2005 and 2010.  (AR 51, 260, 633,

636–37.)  He worked at General Electric from approximately 2000 until 2020 in several different

jobs including as a machine programmer, a toolmaker, and a backseat flight instructor.  (AR 51–53, 275–79.)  He lives with his wife in Fair Haven, Vermont.  (AR 378, 385.)

Plaintiff has a long history of Posttraumatic Stress Syndrome (PTSD), dating back to his service in Iraq.  (AR 48–49.)  In March 2019, he underwent a Compensation and Pension Examination (C&P Exam) with the United States Department of Veterans Affairs (VA)[1].  In relevant part, it was determined that Plaintiff had at least three traumatic stressor events while in the military (AR 636–37), and he met all the diagnostic criteria for PTSD (AR 637–39)  He was noted to have the following symptoms: depressed mood, anxiety, suspiciousness, chronic sleep impairment, flattened affect, disturbances of motivation and mood, difficulty establishing and maintaining effective work and social relationships, and difficulty adapting to stressful circumstances including work or work-like settings.  (AR 639.)  As of March 2020, Plaintiff had an overall VA rating for service-connected disabilities of 80%, including a 50% rating for PTSD. (AR 575, 577.)

In June 2020, Plaintiff stopped working (AR 301) because he did not feel comfortable being around people; he was having severe panic attacks requiring him to leave work daily for four days in a row; and his other PTSD symptoms, including anger/rage issues, memory and concentration problems, anxiety, paranoia, and depression, worsened such that he "c[ould] hardly go anywhere anymore without having a conniption fit over . . . anything" (AR 54–58).  A VA note from July 2020 states that Plaintiff was "recently put out of work after a series of panic attacks with his employer."  (AR 568.)  In September 2020, the VA increased Plaintiff's disability rating for PTSD from 50% to 100%, effective February 24, 2020, noting that Plaintiff's

---

[1] "A [C&P Exam] is generally performed by [a] physician at the behest of the [VA] to determine whether a veteran has a military service-related injury resulting in a disability and, if so, the extent of such disability." *Timothy K. v. Comm'r of Soc. Sec.*, 1:20-CV-1529-JJM, 2022 WL 2062711, at *2 n.5 (W.D.N.Y. June 8, 2022).

symptoms were the same as in March 2019 but also now included: occupational and social impairment with deficiencies in most areas including work, school, family relations, judgment, thinking, or mood; mild memory loss including forgetting recent events, names, and directions; disorientation to time; impaired impulse control; persistent hallucinations; panic attacks; neglect of personal appearance and hygiene; and disorientation to place. (AR 262–64.)

In July 2021, Plaintiff protectively filed the pending application for DIB, alleging disability starting on June 17, 2020 due to PTSD, anxiety, depression, high blood pressure, low back spasms, right knee pain, tinnitus, and sleep apnea. (AR 17, 269, 301, 340.) In a February 2022 Function Report, Plaintiff stated that he: had extreme difficulty with communication when stressed; was easily distracted and forgetful; was irritable and easily frustrated; had no energy; was paranoid; had panic attacks; had chronic insomnia, nightmares, and sleep apnea; and slept for only three to four hours a night, at most. (AR 386–87; *see* AR 320.) Plaintiff explained that on some days all he could do was feed his parrots. (AR 387.) On days when he could do more, he would cook simple meals, start to complete chores around the house but rarely finish them, and try to do errands outside the house when the least amount of people were around. (*Id.*; *see* AR 380.) Plaintiff stated that he no longer did any socializing and he did not engage in his former hobbies including playing online games competitively and working on helicopters and computers, though he was still able to go mountain biking in the summer. (AR 390; *see* AR 324, 382–83.)

Plaintiff's disability application was denied initially and upon reconsideration, and Plaintiff requested an administrative hearing. On April 4, 2023, Administrative Law Judge (ALJ) Dory Sutker conducted a telephonic hearing on the application. (AR 42–74.) Plaintiff appeared and testified, and was represented by counsel. A vocational expert (VE) also testified

at the hearing. (AR 65–73.) Plaintiff testified that his daily activities included taking care of his birds and dogs, mountain-biking four to five times a week, seeing a trainer, and meditating. (AR 58–59.) He stated that his daily PTSD symptoms included anxiety, depression, paranoia, road rage, and problems with concentration/staying on task and focused. (AR 57.) He explained that he had difficulty dealing with people, becoming panicked and angry, and feeling misunderstood. (AR 61.) As a result, he rarely went to the grocery store because he could not handle the crowds and traffic. (AR 64–65.)

On May 3, 2023, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from his alleged disability onset date of June 17, 2020 through the date of the decision. (AR 17–34.) Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–5.) Having exhausted his administrative remedies, Plaintiff filed the Complaint in this action on October 12, 2023. (Doc. 1.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d),

416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's "residual functional capacity" (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her "past relevant work."  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four.  *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019).  At step five, there is a "limited burden shift" to the Commissioner to "show that there is work in the national economy that the claimant can do."  *Petrie v. Astrue*, 412 F. App'x 401, 404 (2d Cir. 2011) (internal quotation marks omitted).

Employing this sequential analysis, ALJ Sutker first determined that Plaintiff had not engaged in substantial gainful activity since June 17, 2020, his alleged disability onset date.  (AR 19.)  At step two, the ALJ found that Plaintiff had the severe impairments of spinal disorder, knee arthropathy, PTSD, depressive disorder, and attention deficit hyperactivity disorder.  (*Id.*) In contrast, the ALJ found that Plaintiff's hypertension, obstructive sleep apnea, gastroesophageal reflux disease, and alcohol use disorder were nonsevere.  (AR 20.)  At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 20–23.)

The ALJ next determined that Plaintiff had the RFC to perform "medium work," but with the following limitations:

> [Plaintiff] can frequently climb ladders, ropes, . . . scaffolds, stairs[,] and ramps, and can frequently balance and crawl, with other postural activities unlimited. He would need an environment without concentrated exposure to extreme cold, wetness, vibration, and hazards, including unprotected heights and dangerous moving machinery. He can understand, remember, and carry out simple instructions and perform simple tasks for two-hour blocks of time throughout the workday consistent with regularly scheduled breaks and lunch. He can engage in incidental contact with the public, meaning dealing with the public is not a part of job duties, but could tolerate very brief encounters such as passing someone in a hallway. He would need an environment where the tasks are generally performed in a solitary manner, but where he could hand off products or objects to coworkers. Within such a setting, he can engage in occasional brief and superficial interactions with coworkers and could collaborate with supervisors on routine matters. He can adapt to occasional, routine changes, and he would need an environment without high production standards such as belt work or an environment with strictly timed tasks.

(AR 23–24.) At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a machinist, a tool-maker apprentice, or a flying instructor. (AR 32.) At the final fifth step, however, relying on testimony from the VE, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of laundry laborer, "laborer stores," and hospital cleaner. (AR 33.) The ALJ concluded that Plaintiff had not been under a disability from the alleged disability onset date of June 17, 2020 through the date of the decision. (AR 34.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he

is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)); *see Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) ("In reviewing a district court's decision upholding a decision of the Commissioner, [the appellate court] review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." (internal quotation marks omitted)). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support the decision. 42 U.S.C. § 405(g); *see Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). "Substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

The substantial evidence standard is "very deferential," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). It is the Commissioner who resolves evidentiary conflicts, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F. 3d 106, 111 (2d Cir. 1998).

Nonetheless, the court should bear in mind that "the Social Security Act is a remedial statute, to be broadly construed and liberally applied," *Dixon v. Shalala*, 54 F.3d 1019, 1028 (2d Cir. 1995) (internal quotation marks omitted), and that the court may not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case," *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (alteration in original) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## Analysis

As discussed below, the ALJ's decision does not apply the correct legal standard. Although the ALJ was not required to analyze the VA's disability ratings, the ALJ should have considered the medical records that were part of the VA record. Moreover, the ALJ's decision is not supported by substantial evidence, and the ALJ failed to properly explain her consideration of the medical opinions.

## I. Parties' Arguments

On February 24, 2024, Plaintiff filed his motion to reverse the Commissioner's decision, arguing that the ALJ applied incorrect law in her evaluation of VA evidence and thus failed to consider medical evidence that was relevant to Plaintiff's disability, including evidence of Plaintiff's PTSD symptoms. (*See* Doc. 11 at 4–8.) The Commissioner filed his motion to affirm the Commissioner's decision, contending that the ALJ's decision is supported by the opinions of several medical consultants and Plaintiff's activities of daily living, and that Plaintiff failed to

cite any medical opinions from the VA that the ALJ failed to supportably evaluate.  (*See* Doc. 15 at 5–8.)

On August 7, 2024, the Court held a hearing on the parties' motions.  Plaintiff's counsel argued that the VA conducted the most comprehensive PTSD evaluation in the record—the March 2019 C&P Exam—and the ALJ should have considered that evaluation in determining whether Plaintiff was disabled.  In response to questioning from the Court, Plaintiff's counsel further argued that the ALJ erred in her consideration of the other medical evidence, including specifically examining consultant Dr. Suzanne Sitkowski's opinion that Plaintiff did not meet the criteria for PTSD.  The Commissioner's counsel contended at the hearing that the ALJ did in fact consider the relevant VA evidence, though she did not state that in her decision.  Moreover, the Commissioner's counsel argued that the VA's 2019 C&P Exam does not show greater limitations than the ALJ found in her RFC determination.  Given the Commissioner's new argument that the ALJ had in fact considered the relevant VA evidence—an argument not made in his motion—the Court requested supplemental briefing from the parties.

In his supplemental memorandum, Plaintiff argued that, in addition to the errors identified in his motion, the ALJ erred by failing to evaluate the required supportability and consistency factors regarding several medical opinions.[2]  (*See* Doc. 18 at 6–8.)  The

---

[2] Plaintiff also asserted—for the first time in his supplemental memorandum—that the ALJ should not have "rel[ied] on improvements to Plaintiff's PTSD due to the use of marijuana without any analysis as to whether these improvements are vocationally relevant."  (Doc. 18 at 6.)  Plaintiff noted that marijuana "is still a controlled substance that is illegal to use under federal law," and thus "its use within the workplace is problematic, even if used for a medical purpose," and "[i]t is difficult to understand how marijuana is supposed to provide an inroad to enabling employment, when it cannot be used in the workplace."  (*Id.* at 7.)  The Court does not consider this argument, as it was not made in Plaintiff's motion to reverse or at the hearing on the motion, and Plaintiff did not file a reply to the Commissioner's motion.  *See Patterson v. Balsamico*, 440 F.3d 104, 114 (2d Cir. 2006) ("This Court generally will not consider arguments raised for the first time in a reply brief.").  Furthermore, the argument is underdeveloped, and Plaintiff did not cite any supporting law in his supplemental memorandum.  *See Bild v. Konig*, No. 09–CV–5576 (ARR)(VVP), 2014 WL 3015236, at *2 (E.D.N.Y. July 3, 2014) ("Since [Defendant] raised this argument for the first time in supplemental briefing and adduced no facts whatsoever in support of it, [the court] decline[s] to consider it.").

Commissioner responded that the ALJ "supportably evaluated the medical source opinions and the VA evidence to determine that [Plaintiff] . . . was not disabled." (Doc. 19 at 1.)

## II.    ALJ's Consideration of Medical Evidence from VA File

The ALJ acknowledged that the record contains "[m]ultiple medical records from [the VA]," and noted that those records "identified that the claimant had a range of disability ratings due to his conditions prior to and during the period at issue." (AR 32.) Regarding those records, the ALJ explained:

> An issue as to whether or not someone is disabled is an issue reserved to the Commissioner, and the opinion of another government agency as to a claimant's disability is not germane or persuasive to this evaluation as different factors were under consideration. Therefore, *these opinions[3] are not evaluated for persuasiveness*.

(*Id.* (emphasis added).)

The Social Security Administration requires the Commissioner to evaluate every medical opinion in the record regarding each disability claim. *See* 20 C.F.R. § 404.1520c(a) ("When a medical source provides one or more medical opinions . . . , we will consider those medical opinions . . . from that medical source together using the [regulatory] factors . . .[; and] [w]e will articulate how we considered the medical opinions . . . in your claim."); *id.* § 404.1520c(b) ("We will articulate in our . . . decision how persuasive we find *all of the medical opinions* . . . in your case record." (emphasis added)); *Justin R. v. Comm'r of Soc. Sec.*, 22-CV-06148-MJR, 2024 WL 3633712, at *4 (W.D.N.Y. Aug. 2, 2024) ("An ALJ must consider all pertinent medical evidence in the record regarding a plaintiff's impairments and must explain why he or she relied on certain opinions of record and not on others." (citing *Shaw*, 221 F.3d at 135)). The ALJ is not required,

---

[3] The Court interprets ALJ Sutker's use of the term "opinions" to refer to the "decisions" of the VA in this case. *See* 20 C.F.R. § 404.1504 ("[W]e will not provide any analysis in our determination or decision about a decision made by any other governmental agency . . . about whether you are disabled . . . .").

however, to consider the disability determinations of other governmental agencies such as the

VA.  The applicable regulation explains that while the Commissioner will not analyze another

government agency's disability decision, he will consider the evidence in the record supporting

the agency's decision:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability . . . and other benefits decisions for their own programs using their own rules.  Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules.  Therefore, in claims filed . . . on or after March 27, 2017, *we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled* . . . .  However, *we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim* . . . .

20 C.F.R. § 404.1504 (emphases added).

It was therefore proper for the ALJ to find the VA's ultimate disability decision,

including its disability ratings, "not germane or persuasive" to Plaintiff's social security

disability claim.  (AR 32.)  *See Edward J. v. Kijakazi*, 5:21-CV-150 (DJS), 2022 WL 4536257, at

*5 (N.D.N.Y. Sept. 28, 2022) (upholding ALJ's rejection of disability findings from workers'

compensation proceedings that found plaintiff "75% to 100% disabled" because "[t]he

assessment of disability contained in a workers' compensation report is, by regulation, not

binding on [the Commissioner] and considered inherently unpersuasive").  But while ALJs may

disregard the decisions, conclusions, or findings of other benefits programs, they may not

disregard the medical opinions underlying those decisions, conclusions, or findings, to the extent

they otherwise contain competent evidence.  *Samuel C. v. Comm'r of Soc. Sec.*, Case # 21-CV-

81-FPG, 2022 WL 17687820, at *3 (W.D.N.Y. Dec. 15, 2022).  "In other words, the mere fact

that a medical source issues an opinion in the context of a [VA] proceeding does not exempt

[that] opinion from § 404.1520c, which requires an ALJ to consider and articulate his

consideration of *all* medical opinions." *Id.* (second alteration in original) (internal quotation

marks omitted); *see Betancourt-Algarin v. Kijakazi*, 20-CV-09327 (GBD) (BCM), 2022 WL

5176862, at *10 (S.D.N.Y. Aug. 5, 2022) ("While disability *decisions* of other government[al]

agencies or private insurers 'are not binding on' the [Social Security Administration] and will not

be evaluated by the ALJ, the ALJ must 'consider all of the supporting *evidence* underlying the

other governmental agency['s] . . . decision' in accordance with the ordinary rules for evaluating

evidence of the same type." (quoting 20 C.F.R. § 404.1504)), *report and recommendation*

*adopted*, 2022 WL 3867851 (Aug. 30, 2022); *Brenda Lee B. v. Comm'r of Soc. Sec.*, No. 5:20-

CV-1403 (CFH), 2022 WL 1421821, at *7 (N.D.N.Y. May 4, 2022) ("[A] decision by any other

governmental agency . . . is not binding on the ALJ[;] [h]owever, [the ALJ] will consider all of

the supporting evidence underlying the other governmental agency['s] . . . decision that [the

ALJ] receive[d] as evidence." (first, fourth, sixth, and seventh alterations in original) (citation

and internal quotation marks omitted)).

        In this case, the ALJ erred in not evaluating the medical opinions contained in the VA

record, other than to state that "medical records from [the VA] identified that [Plaintiff] had a

range of disability ratings due to his conditions prior to and during the period at issue." (AR 32.)

The VA record contains "supporting evidence," including medical opinions, which the

regulations require the ALJ to consider. 20 C.F.R. § 404.1504; *see id.* § 404.1520c(a), (b). For

example, the VA record includes a March 2019 C&P Exam, which contains medical findings

regarding Plaintiff's PTSD, including that Plaintiff suffers from intrusive nightmares, memories,

and flashbacks; and experiences avoidance behavior, feelings of remorse, anxiety, and paranoia.

(*See* AR 624–37.)  The C&P Exam also discusses Plaintiff's struggles with interpersonal relations and occupational functioning, stating that Plaintiff: "has a flood of emotions and memories that can be triggered by noise and unexpected events but . . . can [also] happen without any particular trigger"; "struggles to be around people and does not go out with his wife to dinner or to see a movie"; "can tolerate [only] about an hour in public before he begins to get annoyed by others, feels his chest tightening[,] and has trouble catching his breath"; and "often feels tense and wound up[,] [h]is mind races[,] . . . he cannot concentrate on his job for long[,] [and h]e has a short attention span."  (AR 634.)  The C&P Exam further states that Plaintiff "feels that he is more distrustful of people and situations than is . . . reasonable," he "suspects that others are talking about him or plotting against him," and he "is very distrustful."  (AR 635.)  The ALJ should have considered this evidence in the decision.  *See Justin R.*, 2024 WL 3633712, at *4 ("[C&P Exams] have been held highly relevant and probative to Social Security determinations." (internal quotation marks omitted)); *Joseph M. v. Comm'r of Soc. Sec.*, 1:19-CV-1052 CJS, 2021 WL 841403, at *14 (W.D.N.Y. Mar. 5, 2021) (holding that although ALJ is not required to accept determination of disability contained in C&P report from VA record, ALJ is not free to "simply overlook[]" report in its entirety); *Christopher M. V. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01500 (JJM), 2021 WL 804258, at *2 (W.D.N.Y. Mar. 3, 2021) (remanding for further proceedings where ALJ "failed to evaluate a[] . . . PTSD disability benefits questionnaire completed . . . for the [VA] in connection with a [C&P Exam] to determine plaintiff's entitlement to veteran's benefits"); *Jerona K. v. Comm'r, Soc. Sec. Admin.*, CIVIL ACTION NO. 1:22-cv-2081-CMS, 2023 WL 5491901, at *7, 8 (N.D. Ga. June 29, 2023) (collecting cases and finding that "ALJ's failure to discuss or acknowledge C&P Questionnaire [from VA record] was legal error").

Had the ALJ considered the VA's March 2019 C&P Exam and other medical evidence from the VA records, it is likely that the decision would have been different because this evidence is consistent with the opinions of Plaintiff's treating licensed clinical mental health provider, Dr. William Kelley, and Plaintiff's own statements about his PTSD symptoms, both of which the ALJ inexplicably found inconsistent with the record overall.  (*See* AR 25, 28–31.)  Specifically, Dr. Kelley opined in September 2022 that Plaintiff had "[c]lassic PTSD symptoms" including auditory flashbacks, trouble focusing and concentrating, high startle response, difficulty regulating emotions, trouble sleeping, anger[, and e]xtreme anxiety, especially related to work."  (AR 1008.)  Dr. Kelley further opined that Plaintiff was in the range of being able to handle only "some incidental" but not regular interactions with the public, or unable to handle "even incidental interactions" with the public "without the special accommodations of sheltered work."  (AR 1012.)  A year earlier in September 2021, Dr. Kelley observed that Plaintiff had "[e]xtreme" or "marked" limitation in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and keeping pace; and adapting or managing himself.  (AR 812.)  Dr. Kelley noted that conversing with Plaintiff was "challenging" because he easily lost focus, that Plaintiff's social skills were "markedly impacted," and that Plaintiff's mental disorders including PTSD and generalized anxiety disorder were "serious and persistent." (*Id.*)  Consistent with these opinions, Plaintiff testified at the administrative hearing that he suffers from symptoms of anxiety, depression, and paranoia on a daily basis; and that he "can hardly go anywhere anymore without having a conniption fit over . . . anything."  (AR 57.)  Plaintiff stated that he "had severe panic attacks" towards the end of his time working, causing him to have to leave work every day for four days in a row.  (AR 55.)  Plaintiff further testified

about his anger, stating that he does not try to "come off as aggressive," but he "get[s] flustered and panic[s]" when dealing with people.  (AR 61.)

The Commissioner asserts that Plaintiff "alleges disability beginning June 17, 2020 and[] does not explain how the March 2019 [C&P] evaluation shows that his limitations since June 2020 were greater than those included in the ALJ's RFC determination."  In other words, the Commissioner argues that because the March 2019 C&P Exam was conducted a little over a year before the alleged disability period began in June 2020, the ALJ could disregard this evidence. The law does not support this argument, especially considering that other evidence in the record demonstrates that Plaintiff's condition did not improve after March 2019, but rather, worsened. *See, e.g.*, *Joseph G. v. Comm'r of Soc. Sec.*, Case # 1:21-cv-00046-DB, 2024 WL 641264, at *6 (W.D.N.Y. Feb. 15, 2024) (rejecting Commissioner's argument that "the ALJ was entitled to disregard [school psychologist's] opinion because it was dated several months before Plaintiff's alleged onset date"); *Melissa S. v. Comm'r of Soc. Sec.*, 3:20-cv-1536 (TWD), 2022 WL 22257293, at *6 (N.D.N.Y. Dec. 7, 2022) ("Medical records from before the amended onset date are still records which the ALJ can, and should, consider." (collecting cases)), *aff'd sub nom. Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635 (2d Cir. Jan. 9, 2024).  A July 2020 medical note from the VA records demonstrates Plaintiff's worsening condition, stating that Plaintiff was "recently put out of work after a series of panic attacks with his employer," and that Plaintiff "want[s] to be sure [the VA is] aware his life is significantly changing."  (AR 568.) Plaintiff also testified about these panic attacks at the administrative hearing, as discussed above. Further reflecting the worsening of Plaintiff's mental health issues since 2019, in September 2020 the VA increased his disability rating to 100% due to PTSD.  (*See* AR 262.)

In any event, the ALJ's decision does not suggest that the VA evidence was not considered because it pre-dated the June 2020 onset date. (AR 32.) Therefore, the Court does not credit this *post hoc* explanation for the ALJ's lack of consideration of the VA records. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 169 (1962) (holding that a reviewing court "may not accept appellate counsel's *post hoc* rationalizations for agency action," and that "an agency's discretionary order [must] be upheld, if at all, on the same basis articulated in the order by the agency itself"); *Joseph M.*, 2021 WL 841403, at *14 (disregarding Commissioner's *post hoc* argument that ALJ properly disregarded statements in VA medical report because they expressed an opinion of disability reserved to the Commissioner, where "ALJ did not mention [the] report").

The ALJ's error in failing to consider medical evidence from Plaintiff's VA file is not harmless because some of that evidence, including the March 2019 C&P Exam discussed above, indicates Plaintiff was severely limited in his ability to interact with the public, and the VE testified at the administrative hearing that if Plaintiff experienced occasional episodes when he could not handle "routine and incidental interaction" with the public, coworkers, and supervisors, he would not be able to work. (AR 72.) In these circumstances, the ALJ's error cannot be cured, as the Commissioner suggests, simply by "substantial evidence review" (*see* Doc. 15 at 5–9). The ALJ's consideration of the relevant medical evidence in Plaintiff's VA file requires a reweighing of all the evidence in the record, including Dr. Kelley's opinions, as Plaintiff contends. (*See* Doc. 11 at 8 ("By not considering the evidence of disability from the VA, [the] ALJ has improperly narrowed the range of evidence against which Dr. Kelley's opinions must be judged.").) *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the

substantial evidence standard to uphold a finding of no disability creates an unacceptable risk

that a claimant will be deprived of the right to have her disability determination made according

to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983)

(Commissioner's determination "cannot be upheld when it is based on an erroneous view of the

law that improperly disregards highly probative evidence").

Accordingly, Plaintiff's claim must be remanded for the ALJ to give proper consideration

to the medical evidence in Plaintiff's VA file.

### III.    ALJ's Analysis of Non-VA Medical Opinions

Remand is also required because substantial evidence does not support the ALJ's

decision and the ALJ did not adequately explain the conclusion that the opinions of treating

psychologist Dr. Kelley, who regularly treated Plaintiff starting in around June 2020 (*see* AR

1008), were less persuasive than the opinions of the nonexamining agency consultants and

consultants who examined Plaintiff only once for purposes of providing an opinion.

The regulations require the Commissioner to evaluate the persuasiveness of every

medical opinion received.  20 C.F.R. § 404.1520c(a), (b).  The "most important factors" to be

considered in this evaluation are "supportability" and "consistency."  *Id.* § 404.1520c(a); *see*

*Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, 23-893-cv, 2024 WL 2174236, at *2

(2d Cir. May 15, 2024) ("In evaluating the persuasiveness of a medical opinion, an ALJ must

consider five central factors, the two most important factors being supportability and

consistency." (internal quotation marks omitted)).  The ALJ is required to "explain how [he or

she] considered the supportability and consistency factors for a medical source's medical

opinions."  20 C.F.R. § 404.1520c(b)(2).  When medical opinions are "both equally well-

supported" and "consistent with the record" but not exactly the same, the ALJ is to consider "the

other most persuasive factors" in determining how persuasive those opinions are. *Id.*

§ 404.1520c(b)(3). Among those "other most persuasive factors" are the medical source's

"[r]elationship with the claimant," including whether and how frequently the medical source

examined the claimant, the length of the relationship, the specialty of the medical source, and the

purpose of the treatment received from the medical source if any. *Id.* § 404.1520c(c)(3).

In this case, many if not all of the regulatory factors favor finding Dr. Kelley's opinions

persuasive, especially as compared to the opinions of medical sources who did not examine or

treat Plaintiff, or treated Plaintiff in more general specialties like primary care. Although ALJs

are certainly permitted to take into consideration the opinions of nonexamining and non-treating

sources in determining a claimant's RFC, *see Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487

(2d Cir. 2012) ("The report of a [s]tate agency medical consultant constitutes expert opinion

evidence which can be given weight if supported by medical evidence in the record."),

"[b]ecause a treating source examines a claimant directly, they 'may have a better understanding

of [a claimant's] impairment(s) . . . than if the medical source only reviews evidence in [a

claimant's] folder,'" *Soto v. Comm'r of Soc. Sec.*, 19-CV-4631 (PKC), 2020 WL 5820566, at *4

(E.D.N.Y. Sept. 30, 2020) (omission and second and third alterations in original) (quoting 20

C.F.R. § 404.1520(c)(3)(v)). Therefore, "courts frequently find that RFC determinations that

depend entirely on the opinions of non-examining experts and one-time consultative examiners

are not supported by substantial evidence." *Agostino v. Kijakazi*, 22-CV-7235 (PKC), 2024 WL

1259247, at *5–6 (E.D.N.Y. Mar. 25, 2024) (internal quotation marks omitted); *see Estrella*,

925 F.3d at 98 ("We have frequently cautioned that ALJs should not rely heavily on the findings

of consultative physicians after a single examination." (internal quotation marks omitted)); *Fintz

v. Kijakazi*, 22-CV-00337(KAM), 2023 WL 2974132, at *5 (E.D.N.Y. Apr. 15, 2023) ("While

heavy reliance on a one-time examiner's opinion does not automatically constitute a legal error, the Second Circuit has warned that heavily relying on an examiner who only examined a claimant once is inadvisable."). "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98; *see Skartados v. Comm'r of Soc. Sec.*, 20-CV-3909 (PKC), 2022 WL 409701, at *9 (E.D.N.Y. Feb. 10, 2022) (remanding because ALJ relied on opinion of nonexamining agency consultant which relied on opinion of consultant who examined plaintiff only once and did not consider entirety of plaintiff's lengthy mental health history). Especially "[i]n the context of a psychiatric disability diagnosis," ALJs should "give more weight to the opinion of the source who has examined [the claimant] than to the opinion of a source who has not." *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) (internal quotation marks omitted). In fact, in cases where mental health is the most limiting disability, it is generally "improper to rely on the opinion of a non-treating, non-examining doctor[,] because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." *Id.*

Without adequate explanation, the ALJ relied on the opinions of nonexamining agency consultants Dr. Thomas Reilly, Dr. Edward Schwartzreich, Dr. John Petty, and Dr. Ellen Atkins, and examining consultant Dr. Suzanne Sitkowski, while discrediting the opinions of Dr. Kelley, who regularly treated Plaintiff for a period of at least two years. The ALJ's consideration of Dr. Kelley's opinions is superficial, frequently stating that Dr. Kelley's opinions are "inconsistent with the record overall, showing [Plaintiff] to have no more than moderate limitations in the ability to interact with others, concentrate, and adapt" (AR 28, 29, 30, 31), but citing comparatively weak or unsupportive evidence to substantiate this conclusion. The Court

examines below the record evidence the ALJ relied upon to conclude that Dr. Kelley's opinions

were inconsistent with the record overall (AR 31), and explains why the cited exhibits do not

substantiate that conclusion:

- Exs. 3F/6–9, 12, 16, 20 (AR 499–502, 505, 509, 513). These are treatment notes from Community Health Center of Rutland, mostly prepared by treating primary care provider Teddi Lovko, MD. These treatment notes are largely imprecise regarding Plaintiff's mental health challenges including his PTSD, merely stating—without any added detail or context—that although Plaintiff's mood and affect were normal, and his judgment and insight were grossly intact, he was experiencing worsening PTSD, anxiety attacks at work, "bursts of anxiety," and "moments of extreme anxiety" (AR 499). It is unclear why the ALJ found these mostly generic mental status notes from a primary care provider more persuasive than the treatment notes and opinions of treating psychologist Dr. Kelley regarding Plaintiff's particular PTSD symptoms and their effects on Plaintiff's ability to function. *See Wendy V. v. Comm'r of Soc. Sec.*, 5:22-CV-1185 (LEK), 2024 WL 1069933, at *12 (N.D.N.Y. Mar. 12, 2024) ("On remand, the ALJ should explain why formulaic notes on mental status outweigh reports in the record of severe trauma, a limited ability to interact with the general public, and frequent statements by both [Plaintiff's treating mental health provider] and Plaintiff of Plaintiff's inability to interact appropriately in public."). Moreover, in another part of the decision, the ALJ finds Dr. Lovko's opinion "unpersuasive," stating that it is "generally conclusory" and "generally inconsistent with the medical evidence of record overall." (AR 31, 32.) The ALJ therefore uses a medical opinion that she found generally inconsistent with the record, i.e., Dr. Lovko's opinion, to support the finding that Dr. Kelley's medical opinion is inconsistent with the record overall.

- Ex. 14F/8, 13 (AR 801/806). Same as above.

- Ex. 16F/2 (AR 812). This is the second page of a three-page report by treating psychologist Dr. Kelley. This page includes strong opinions on Plaintiff's limitations, including: "Extreme limited or marked limitation of 2: understand/remember/apply information, interact with others, concentrate/persist/remain pace, adapt or manage oneself. In all of these categories, the client endorses marked disturbances. Carrying on a conversation with him is challenging because he easily loses his focus. He also noted that his social skills are markedly impacted and he meets the clinical diagnosis for agoraphobia." Dr. Kelley also opines: "Mental disorder is serious and persistent, there is medical documentation for over two years . . . [of] minimal ability to adjust to environment or to demands that are not already part of daily life. It is well-documented now that this client's PTSD and generalized anxiety disorder have been serious . . . and persistent." These comments do not support the ALJ's statement that the record shows "the claimant to have no more than moderate limitations in the ability to interact with others, concentrate, and adapt," and yet the ALJ cited this page in support of that statement.

20

- Ex. 17F/3 (AR 818). This is one page of a treatment note from Dr. Lovko. The note does not detail Plaintiff's mental health challenges including PTSD symptoms, instead stating generally that Plaintiff's mood and affect are normal, and his judgment and insight are grossly intact.

- Ex. 22F/3 (AR 886): Same as above.

- Ex. 28F/4–5 (AR 929–30). These are pages from a report by examining consultant Dr. Sitkowski, stating that "there is nothing to suggest that [Plaintiff] would be unable to get along with others in the workplace"; Plaintiff "has generally been able to function within the confines of a structured environment;" Plaintiff "should be able to maintain a regular routine and sustain attendance"; and Plaintiff's "ability to handle workplace stressors may vary depending on the work environment." (AR 930.) As noted above, although Dr. Sitkowski did examine Plaintiff, it was only on one occasion and not for the purpose of treatment. The ALJ did not adequately explain why this opinion is more persuasive than the opinions of Dr. Kelley, who treated Plaintiff for an extended period of time and whose opinions on Plaintiff's ability to function were much more severely limiting than Dr. Sitkowski's. *See Wendy V.*, 2024 WL 1069933, at *12 ("On remand, . . . [t]he ALJ should . . . explain why Bartlett's role as a provider who cared for Plaintiff multiple times over a week for more tha[n] a year offers less insight into Plaintiff's ability to function than the observations of consultants who saw her once or simply examined the medical record."). Even though the ALJ cited this record in support of the statement that Dr. Kelley's opinions are inconsistent with the record overall, the ALJ stated in another part of the decision that Dr. Sitkowski's opinions are "only generally persuasive" and "generally inconsistent with the totality of the medical record overall" (AR 28). The ALJ again relied on a medical opinion that she found generally inconsistent with the record to support the conclusion that Dr. Kelley's medical opinion is inconsistent with the record overall.

- Ex. 33F2 (AR 1014). This is one page of a treatment note from Dr. Kelley, which offers nothing particularly important or relevant to Plaintiff's claim, other than mentioning that Plaintiff was responsible for monitoring his brother-in-law's bills and other financial accounts. It is unclear why the ALJ cited this page in support of the statement that Plaintiff has "no more than moderate limitations in the ability to interact with others, concentrate, and adapt" (AR 31), as there is nothing in the record to indicate that Plaintiff's monitoring his relative's personal finances required an ability to interact with others, concentrate, or adapt for extended or continuous periods of time.

The ALJ's statements that the opinions of treating psychologist Dr. Kelley are "inconsistent with the record overall," and that "the totality of the record supports [Plaintiff] being limited as identified in the [RFC] above" (*see, e.g.*, AR 31), are largely unsupported by the evidence cited

in support of those statements (*see, e.g.*, *id.* (citing AR 499, 503, 505, 509, 513, 801, 806, 818, 886, 929–30)), as well as by the record as a whole.

In addition, neither the ALJ in the decision nor the Commissioner in his motion or supplemental memorandum considers that Dr. Kelley—who as a psychologist specializes in the treatment of mental health matters—treated Plaintiff, seeing him frequently for over two years. In contrast, many of the agency consultants never met with Plaintiff, and those who did met with Plaintiff only once and not for treatment purposes. Dr. Lovko, the only relevant treating medical source other than Dr. Kelley, was a primary care physician and did not specialize in treating mental health issues. In his evaluation of the medical opinions, the Commissioner does not distinguish between the opinions of treating medical sources, examining consultants, and nonexamining consultants.

Even subsequent to the 2017 revisions to the regulations, however, the law recognizes a difference, holding that "[t]he new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021); *see James Martin B. v. Comm'r of Soc. Sec.*, 1:23-cv-05170-GRJ, 2024 WL 3159844, at *5 (S.D.N.Y. June 25, 2024) ("[T]he Second Circuit has . . . long cautioned that 'ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" (quoting *Selian*, 708 F.3d at 419)); *Crystal P. v. Kijakazi*, Case No. 5:20-cv-201, 2022 WL 16820981, at *4 (D. Vt. Jan. 25, 2022) ("The regulations naturally suggest that the opinions of treating sources will often be persuasive because the examining relationship provides them with a better understanding of an applicant's condition." (internal quotation marks omitted)); *Acosta Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) ("A survey of

[recent] cases . . . show[s] that while the treating physician's rule was modified, the essence of

the rule remains the same, and the factors to be considered in weighing the various medical

opinions in a given claimant's medical history are substantially similar."), *report and*

*recommendation adopted*, 2022 WL 717612 (Mar. 10, 2022).  Even though the regulations no

longer require ALJs to give controlling weight to a treating physician's well-supported opinions

that are consistent with the record,[4] they still recognize as a "factor" to be considered in

reviewing medical opinions the medical source's "[r]elationship with the claimant."  20 CFR

§ 404.1520c(c)(3); *see Jesse R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1220 (CFH), 2022 WL

813918, at *10 (N.D.N.Y. Mar. 17, 2022) ("Although the treating physician rule no longer

applies, . . . the opportunity to observe and treat the claimant constitutes important support for a

medical opinion under the new standard" because "the regulations still recognize the

foundational nature of the observations of treating sources, and consistency with those

observations is a factor in determining the value of any [treating source's] opinion." (alteration in

original) (internal quotation marks omitted)); *Skartados*, 2022 WL 409701, at *9 (applying new

regulations and noting that "the Second Circuit has frequently cautioned ALJs not to rely too

heavily on consultative examiners, particularly in the context of mental illness" (internal

quotation marks omitted)); *Tammy T. v. Kijakazi*, Case No. 5:21-cv-1, 2022 WL 71995, at *15

(D. Vt. Jan. 7, 2022) ("Although the report of a state agency medical consultant constitutes

expert opinion evidence which can be given weight if supported by medical evidence in the

---

[4]  In January 2017, the SSA promulgated new regulations regarding the consideration of medical opinion evidence that apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed after that date, the new regulations apply here.  The previous regulations required "an ALJ . . . to give controlling weight to a treating physician if those opinions were 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and [were] not inconsistent with the other substantial evidence in [the] case record.'"  *Acosta Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (citations omitted), *report and recommendation adopted*, 2022 WL 717612 (Mar. 10, 2022).

record, even under the new regulations, the consistency of the state agency consultants' opinions with observations of the treating sources remains an important factor." (citation and internal quotation marks omitted)).

In his evaluation of the medical opinions, the ALJ should have considered that Dr. Kelley specialized in the treatment of mental health conditions and treated Plaintiff's PTSD symptoms, including anxiety and difficulty socializing, whereas the reviewing consultants never met Plaintiff, the examining consultants met with Plaintiff only one time, and Dr. Lovko did not specialize in the treatment of mental health.

The ALJ's decision also includes unsupported findings regarding the opinions of nonexamining agency consultant Dr. Schwartzreich and examining consultant Dr. Sitkowski. After meeting with Plaintiff on one occasion, Dr. Sitkowski opined that Plaintiff could "get along with others in the workplace," and could maintain a regular routine and sustain attendance at work. (AR 930.) Dr. Schwartzreich, on the other hand, who never met with Plaintiff, found that Plaintiff had a moderate limitation in his ability to interact with others (AR 99), and a social capacity for only "routine interactions with supervisors and coworkers," having "difficulty with intense social interactions" (AR 103). The ALJ found Dr. Sitkowski's opinions about Plaintiff's ability to socialize "generally inconsistent with the totality of the medical record overall," and Dr. Schwartzreich's opinions "generally consistent" with the record. (AR 28.) But Dr. Schwartzreich's opinions are derived solely from his review of the record, and he included in his report large portions of Dr. Sitkowski's opinion regarding Plaintiff's mental impairments. (*See* AR 97–98.) The difference in opinions between Dr. Schwartzreich and Dr. Sitkowski regarding Plaintiff's ability to interact with others in the workplace goes to the heart of Plaintiff's claim. The Court is unable to decipher from the decision why the ALJ adopted

Dr. Schwartzreich's opinion on this issue over Dr. Sitkowski's.  More importantly, the Court is unable to decipher why the ALJ rejected the opinion of Dr. Kelley—who treated Plaintiff's mental health impairments including social anxiety for over two years—that Plaintiff is extremely limited in his ability to interact with others.  (*See* AR 31.)  As explained above, it is not sufficient for the ALJ to generally state that Dr. Kelley's opinion about Plaintiff's ability to interact with others is "very inconsistent with the record overall" and that "the totality of the record supports [Plaintiff] being limited as identified in the [RFC]," relying on records that do not in fact support those conclusions.  (*Id.* (citing AR 812 (page from Dr. Kelley letter opining that Plaintiff is extremely or markedly limited in her ability to interact with others), 929 (page from Dr. Sitkowski report stating nothing specific about Plaintiff's ability to interact with others), 1014 (page from Dr. Lovko treatment notes stating nothing specific about Plaintiff's ability to interact with others).)  *See, e.g.*, *Erica B. v. Comm'r of Soc. Sec.*, Case # 21-cv-06202-FPG, 2023 WL 5154640, at *3 (W.D.N.Y. July 27, 2023) ("Simply stating that an opinion is not consistent with the overall record, without citing examples of inconsistencies or discussing the inconsistencies in the record, is an insufficient rationale for discounting the opinion of a treating physician.").

It is also difficult to understand the ALJ's finding that Plaintiff's PTSD is a severe impairment.  Neither Dr. Schwartzreich nor Dr. Sitkowski found that Plaintiff's PTSD is a severe impairment, with Dr. Sitkowski stating that Plaintiff "no longer meets [the] criteria for th[is] diagnosis" (AR 929) and Dr. Schwartzreich simply not opining about Plaintiff's allegations of PTSD (*see* AR 97–100, 102–05).[5]  Without explanation, however, the ALJ found Plaintiff's PTSD to be a severe impairment.  (AR 19.)  This finding is difficult to understand because it is

---

[5] Like Dr. Sitkowski, agency consultant Dr. Geoff Knisely also found that Plaintiff does not meet the criteria for PTSD.  (*See* AR 101.)  The ALJ did not address that finding in the decision.  (*See* AR 26, 27.)

inconsistent with the opinion of Dr. Sitkowski, which the ALJ found "generally persuasive" (AR 28). It finds no particular support from the opinion of Dr. Schwartzreich, which the ALJ found "persuasive" (*id.*); and it agrees with the opinions of Dr. Kelley, which the ALJ found "inconsistent with the record overall" and "not persuasive" (AR 29).

Remand is required for the ALJ to reconsider the medical opinions of Dr. Kelley and the other relevant medical sources, and to evaluate what weight these opinions should be given under the applicable regulations. *See, e.g.*, *Rosa v. Kijakazi*, 1:22-CV-1992 (AMD), 2023 WL 4902488, at *4 (E.D.N.Y. Aug. 1, 2023) ("Because [t]he ALJ's rationale [for his evaluation of the medical evidence] is unclear in light of the record evidence, the ALJ's decision must be remanded." (first alteration in original) (citation and internal quotation marks omitted)).

## Conclusion

For these reasons, the Court GRANTS Plaintiff's motion (Doc. 11), DENIES the Commissioner's motion (Doc. 15), and REMANDS for further proceedings and a new decision in accordance with this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 5th day of November 2024.

/s/ Kevin J. Doyle
United States Magistrate Judge